# 98 DTA 157

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL I - SAN JUAN**
**PANEL III**

COST CONTROL COMPANY
Apelante

v.

OFICINA PARA EL MEJORAMIENTO DE LAS ESCUELAS PUBLICAS DE P.R.; DEPTO. DE EDUCACION; ADMINISTRAción DE SERVICIOS GENERALES; ESTADO LIBRE ASOCIADO DE PUERTO RICO; CARLOS SOLER AQUINO, POR SI, COMO ADMINISTRADOR Y COMO DIRECTOR EJECUTIVO DE LA O.M.E.P.; FULANA DE TAL; Y LA SOC. LEGAL DE GANACIALES QUE AMBOS INTEGRAN
Apelados

Núm. KLAN-97-01114

San Juan, Puerto Rico, a 12 de marzo de 1998

Panel integrado por su Presidenta, Jueza Ramos Buonomo,
y los Jueces González Román y Córdova Arone

Ramos Buonomo, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Cost Control Company (Cost) presentó ante nos un recurso de apelación en el que solicita que revoquemos la determinación del Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante dictamen denominado sentencia sumaria parcial y resolución, ■ emitido el 2 de septiembre de 1997, dicho tribunal resolvió que Cost había incumplido con la cláusula decimoctava del contrato suscrito entre ésta y la Oficina para el Mejoramiento de las Escuelas Públicas de Puerto Rico (la O.M.E.P.)., por lo que desestimó la reclamación que originalmente había presentado Cost contra O.M.E.P por incumplimiento de contrato. Por los fundamentos que pasamos a exponer, revocamos la sentencia apelada. Erró el tribunal *a quo* al resolver la controversia presentada por las partes mediante el mecanismo de sentencia sumaria. Como cuestión de derecho no procede disponer del presente caso sumariamente. Existen aspectos de la controversia que requieren la presentación de prueba adicional a la acompañada a la moción de sentencia sumaria, a pesar de que la prueba presentada por la O.M.E.P., como promovente de la moción de sentencia sumaria, no fue controvertida por Cost. Veamos.

### I

De las determinaciones de hechos del Tribunal de Primera Instancia, las cuales no han sido objetadas ante nos, surgen los siguientes hechos no controvertidos.

El 30 de diciembre de 1992 Cost suscribió un contrato de servicios con la O.M.E.P. Dicho contrato fue el resultado de una subasta convocada por la O.M.E.P., cuya buena pro fue adjudicada a Cost. Mediante el referido acuerdo, Cost se obligó a dar servicios de mantenimiento a 125 escuelas públicas del área de San Juan. Por su parte, la O.M.E.P. se obligó a compensar dichos servicios por la cantidad total de $1,722,375.00. El contrato entró en vigor el 21 de enero de 1993 y, por tener término de un año, venció el 30 de enero de 1994. El 26 de enero de 1994, ■ antes de que expirara el término del contrato, el Director Ejecutivo de la O.M.E.P., informó mediante carta a la presidenta de Cost, Sra. María Judith Oquendo, que el contrato sería extendido mes a mes a partir del 1 de febrero de 1994 hasta que cualquiera de las partes notificara por escrito su intención de dar por terminada la relación

contractual. En dicha comunicación el Director Ejecutivo de la O.M.E.P. indicó, además, que todas las cláusulas y condiciones del contrato original permanecerían inalteradas. Cost continuó prestando sus servicios a la O.M.E.P. hasta mayo de 1994.

El 14 de octubre de 1993, estando aún vigente el término original establecido en el contrato, Cost presentó demanda contra la O.M.E.P. en la que alegó que ésta le adeudaba cierta cantidad de dinero por servicios prestados en virtud del contrato. Reclamó Cost, además, indemnización por los daños y perjuicios sufridos como consecuencia del alegado incumplimiento contractual de la O.M.E.P.

En su contestación a la demanda, la O.M.E.P. solicitó la desestimación de las reclamaciones en su contra, alegando, entre otras cosas, que quien incumplió con los términos del contrato fue Cost. Posteriormente, la O.M.E.P. presentó una reconvención en la que reclamó la devolución del dinero que había pagado a Cost en virtud del contrato. Junto con la misma, la O.M.E.P. presentó una moción de sentencia sumaria y, posteriormente, un memorando en apoyo a dicha solicitud. Por su parte, Cost presentó su oposición a que se dictara sentencia sumaria sin acompañar documento alguno en apoyo a sus alegaciones.

El Tribunal de Primera Instancia acogió la solicitud de la O.M.E.P. por lo que desestimó la reclamación de Cost y dictó sentencia sumaria resolviendo que Cost había incumplido con la cláusula decimoctava del contrato. Razonó dicho foro que habiendo mediado incumplimiento por parte de Cost, ésta se encuentra impedida de reclamar a la O.M.E.P. el cumplimiento de su parte de la obligación. El tribunal dejó para resolver posteriormente lo referente a la reconvención presentada por la O.M.E.P. ■

No conforme con dicha determinación, acude ante nos Cost, alegando como parte de su señalamiento de errores que incidió el tribunal *a quo* al dictar sentencia sumaria en el caso del epígrafe, al resolver que Cost había incumplido con una de las condiciones esenciales del contrato y al no aplicar al caso de marras la doctrina del enriquecimiento injusto. Evaluemos los méritos de tales planteamientos.

## II

La sentencia sumaria es un mecanismo procesal provisto por la Regla 36 de las de Procedimiento Civil. 32 L.P.R.A. Ap. III, R. 36. Dicha regla dispone que una parte puede presentar una moción para que se dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación que se solicita. Regla 36.1 de las de Procedimiento Civil, *supra*. *"La moción de sentencia sumaria es aquella que solicita que se dicte sentencia a favor del promovente a base de prueba que a la moción se acompaña sin necesidad de que se celebre vista en su fondo porque en realidad no existe controversia real sobre ningún hecho material en el caso."* Rafael Hernández Colón, *Derecho Procesal Civil,* Ed. Michie de Puerto Rico, San Juan, 1997, pág. 205

La Regla 36.3, *supra*, ha sido objeto de abundante interpretación por parte de nuestro Tribunal Supremo. ■ Es doctrina reiterada que la presentación de una moción de sentencia sumaria obliga a la parte contraria a presentar aquellas pruebas que utilizaría en el juicio para apoyar una alegación. Para derrotar dicha moción el opositor debe presentar documentos que controviertan los hechos presentados por el promovente. *Toledo Maldonado v. Cartagena Ortiz,* __ D.P.R. __ (1992), **92 J.T.S. 173;** *Cuadrado Lugo v. Santiago Rodríguez,* 126 D.P.R. 272 (1990).

Es norma trillada que no procede dictar sentencia sumaria cuando existe una verdadera controversia de hecho entre las partes. Sin embargo, también ha sido recalcado que una parte opositora a la solicitud de sentencia sumaria no puede descansar meramente en aseveraciones generales, sino que tiene que sustentar sus alegaciones mediante prueba. *Flores v. Municipio de Caguas,* 114 D.P.R. 521 (1983).

Por lo tanto, un juez puede dictar sentencia sumaria cuando los documentos que acompañan la moción y la oposición a la misma comprueban que no existe controversia sustancial en cuanto a ningún hecho material y que como cuestión de derecho procede dictar sentencia a favor de la parte que la solicita. *Cuadrado Lugo, supra.*

En el presente caso, el tribunal *a quo* resolvió que no existe controversia en cuanto a los hechos materiales del mismo. Cabe destacar, sin embargo, que dicho foro resolvió sólo un aspecto de la controversia presentada por las partes, específicamente lo relacionado con la alegada violación de Cost de la cláusula decimoctava del contrato. No obstante, como demostraremos más adelante, al no resolver todas las controversias presentadas por las partes, erró el Tribunal de Primera Instancia al dictar sentencia sumaria en el presente caso.

## III

Para dirimir la controversia presentada ante nos, es necesario, en primer lugar, determinar si fue correcta la determinación del tribunal apelado a los efectos de que Cost incumplió con la cláusula decimoctava del contrato. Es preciso señalar, que sobre los hechos materiales relacionados con este aspecto del caso no existe controversia entre las partes.

La cláusula decimoctava del contrato establece lo siguiente:

*"EL CONTRATISTA certifica y garantiza que al momento de suscribir este contrato ha rendido su planilla contributiva durante los cinco (5) años previos a este contrato y no adeuda contribuciones al Estado Libre Asociado de Puerto Rico, o se encuentra acogido a un plan de pago, con cuyos términos y condiciones está cumpliendo. Expresamente se reconoce que esta es una condición esencial del presente contrato y de no ser correcta en todo o en parte la anterior certificación, esto será causa suficiente para que la parte contratante pueda dejar sin efecto el mismo y la parte contratada tendrá que reintegrar a la parte contratante toda suma de dinero recibida bajo este contrato.*

*De necesitar EL CONTRATISTA la subcontratación de personas naturales o jurídicas para la realización de todo o parte de este proyecto, inclusive de asesores, requerirá de éstos que sometan la correspondiente certificación establecida en el párrafo anterior de esta cláusula conjuntamente con la firma de todo convenio sobre subcontratación o asesoría. En todo caso, EL CONTRATISTA se compromete a notificar a LA OFICINA sobre toda subcontratación otorgada para la realización de las obras aquí contratadas y conforme a lo especificado en la cláusula DECIMO PRIMERA de este contrato."*

Ninguna de la partes ha cuestionado ante nos la determinación del tribunal *a quo* a los efectos de que al momento de suscribir el contrato que nos ocupa, Cost no adeudaba suma alguna en concepto de contribuciones sobre ingresos al Departamento de Hacienda de Puerto Rico. Tampoco se ha cuestionado el hecho de que Cost había radicado sus planillas contributivas correspondientes a los cinco (5) años inmediatamente anteriores al momento de suscribir el mismo. ■

A pesar de ello, razonó el foro apelado que en virtud del historial de la cláusula y de la política pública del Estado, la antes transcrita cláusula exige, no sólo que se certifique por el contratista la radicación de las planillas correspondientes a los (5) años anteriores al contrato, sino también la certificación de que las mismas fueron presentadas a tiempo, a tenor con las leyes contributivas del país. El tribunal basó su conclusión en que la referida cláusula es una que, según la Orden Ejecutiva Núm. OE-1991-24 del 18 de junio de 1992, debe ser incluida mandatoriamente en todo contrato entre cualquier persona natural o jurídica y cualquier departamento, agencia, instrumentalidad o corporación pública y cuyo propósito es, según establecido en la propia orden ejecutiva, propiciar que las personas que contraten con el gobierno cumplan con sus responsabilidades contributivas.

En vista de que Cost no controvirtió el hecho de haber presentado sus planillas tardíamente, el Tribunal de Primera Instancia resolvió que dicha parte había incumplido una condición esencial del contrato, en virtud de los términos del mismo, estando impedida de reclamar cumplimiento específico a la O.M.E.P. Esto, a pesar de que dicho foro reconoce en su sentencia que la obligación de haber rendido las planillas a tiempo no surge de forma específica en el contrato. ■

Resolvemos que erró el foro apelado al hacer tal interpretación de la cláusula que nos ocupa. Los términos de la misma son claros, sin dejar lugar a dudas en cuanto a su alcance. Específicamente se señala en dicha cláusula que la certificación la hace el contratista (Cost) al momento de suscribir el contrato y sólo requiere que se certifique el hecho de que el contratista ha presentado sus planillas de contribuciones durante los cinco (5) años previos al contrato. De la misma no surge que se requiere

una afirmación a los efectos de que las planillas exigidas fueron presentadas a tiempo ante el Departamento de Hacienda, ni mucho menos que esta obligación sea de carácter prospectivo, como señala ante nos la O.M.E.P. La interpretación dada por el foro apelado dista mucho del lenguaje claro, sencillo y específico de la cláusula. No podemos dar a la misma el alcance tan amplio y excesivo que le dio el foro apelado.

Sabido es que cuando los términos y condiciones de un contrato son claros, específicos y no dejan lugar a dudas en cuanto a la intención de los contratantes, se estará al sentido literal de sus cláusulas. Artículo 1233 del Código Civil, 31 L.P.R.A. sec. 3471; *Unisys v. Ramallo,* __ D.P.R. __ (1991), **91 J.T.S. 69**, a las págs. 8853-54.

Por lo tanto, no existiendo controversia en cuanto a que Cost no adeudaba contribuciones al gobierno de Puerto Rico al momento de suscribir el contrato, ni tampoco en cuanto a que Cost había radicado sus planillas durante los cinco (5) años anteriores al acuerdo, resolvemos que dicha parte no incumplió con lo especificado en la cláusula decimoctava del contrato, por cuanto ésta no ofreció información falsa sobre sus obligaciones contributivas, según los términos del contrato.

## IV

A pesar de lo anterior, es necesario que ahondemos más en el análisis para determinar si en efecto Cost incumplió con la cláusula decimoctava del contrato. En su moción de sentencia sumaria la O.M.E.P., como alegación alterna, planteó que Cost incumplió con la referida cláusula, ya que el contrato fue renovado en febrero de 1994 y en ese momento Cost no había rendido sus planillas correspondientes a los años 1992 y 1993. Según la O.M.E.P., puesto que al renovarse el contrato se mantuvieron vigentes las condiciones originales del contrato, Cost venía obligada a certificar nuevamente que había rendido las planillas de los cinco (5) años anteriores, lo cual no había hecho.

A pesar de no existir controversia en cuanto a que al momento en que se extendió el término original del contrato Cost no había rendido sus planillas correspondientes a los años 1992 y 1993, es necesario analizar el efecto que tuvo la extensión de la duración del contrato, para determinar si realmente medió incumplimiento por parte de Cost. Veamos.

En nuestro ordenamiento jurídico convergen dos (2) modalidades de la novación, la novación extintiva y la modificativa. Tal y como su nombre sugiere, la figura de la novación extintiva es una de las causas mediante las cuales se puede extinguir una obligación. Artículo 1110 del Código Civil, 31 L.P.R.A. 3151. Sin embargo, el efecto de una novación no es siempre extintivo, sino que puede ser meramente modificativo, manteniéndose de forma íntegra la obligación original y subsistiendo de tal forma las garantías accesorias de la misma. *Teacher's Annuity v. Soc. de Gananciales,* 115 D.P.R. 277, 285 (1984); *Miranda Soto v. Mena Eró,* 109 D.P.R. 473, 478 (1980); *Warner Lambert Co. v. Trib. Sup.,* 101 D.P.R. 378, 389 (1973).

Según el artículo 1157 del Código Civil, 31 L.P.R.A. sec. 3241, la modificación de un contrato puede darse bajo las siguientes circunstancias:

*"(1) Variando su objeto o sus condiciones principales.*

*(2) Substituyendo la persona del deudor.*

*(3) Subrogando a un tercero en los derechos del acreedor."*

Sin embargo, para que una obligación quede extinguida por efecto de la figura de la novación, el Código Civil exige que los contratantes hayan declarado terminantemente que desean extinguir su anterior obligación y sustituirla por una nueva, o que la antigua y la nueva obligación sean de todo punto incompatibles. Artículo 1158 del Código Civil, 31 L.P.R.A. sec. 3242.

El primer criterio establecido en al artículo 1158, ■ *supra*, para determinar cuándo una obligación queda extinguida no representa mayores inconvenientes, por cuanto se trata de la voluntad expresa de las partes. Sin embargo, cuando las partes no han expresado su deseo de sustituir una obligación por otra, es necesario entonces evaluar si en efecto existe incompatibilidad entre la antigua y la nueva

obligación. Según la jurisprudencia, para ello es *"necesario inferir la voluntad novatoria examinando la naturaleza de las obligaciones y las circunstancias que rodean los acuerdos de las partes". G. & J. Inc. v. Doré Rice Mill Inc.,* 108 D.P.R. 89, 91 (1978). Según *Warner Lambert Co., supra,* a la pág. 393, *"la incompatibilidad a la que se refiere el Código es a la absoluta a la excluyente de todo punto".* No existe tal incompatibilidad cuando se trata de obligaciones perfectamente armonizables. Es necesario que se trate de alteraciones esenciales contenidas en la obligación, es decir, que exista una variación en las condiciones principales. *Miranda Soto, supra,* a la pág. 479.

Ahora bien, no estamos ante una novación extintiva cuando los contratantes sólo se limitan a reproducir la obligación antes contraída con algún cambio insignificante. *Constructora Bauzá v. García López,* __ D.P.R. __ (1991), **91 J.T.S. 99**, a la pág. 9079; *Marina Ind., Inc. v. Brown Boveri Corp.,* 114 D.P.R. 64, 73-74 (1983).

No obstante lo establecido en la doctrina, es necesario tener presente el rol predominante que juega la voluntad de las partes para determinar cuándo estamos ante una novación y el efecto que tiene la misma sobre lo originalmente pactado. Según nos señala Puig Brutau *"[e]n el derecho moderno las reglas de la novación son compatibles, en principio, con la voluntad de los sujetos de derecho para obligarse, liberarse o alterar sus relaciones jurídicas de la manera que estimen conveniente...".* ■

Por lo cual, no existe una regla inflexible que sirva para determinar en todo caso cuándo nos encontramos ante la alteración de una condición principal o de una accesoria para efectos de poder concluir si en efecto un cambio en algún término o condición de un contrato implica una novación modificativa o una extintiva. Según nos señala Puig Brutau, citando a Castán:

*"La relatividad del límite que separa lo principal y lo accidental, da gran inseguridad a toda esta doctrina y obliga a que se considere, en cada caso, para determinar si existe o no verdadera novación, no sólo la naturaleza de la cláusula modificativa, sino también la voluntad de las partes y la significación económica de la modificación."* ■

Cónsono con lo anterior, nuestro más alto foro ha resuelto que la novación es siempre una cuestión de intención, la cual debe inferirse de las circunstancias particulares de cada caso. *Warner Lambert, supra,* a la pág. 389. En virtud de ello se ha señalado que, en definitiva, el criterio jurisprudencial es el que juzga acerca de si han variado las condiciones principales y, por tanto, se deja a la apreciación de cada caso si una variación afecta a una condición que ha de ser tenida por principal. *Miranda Soto, supra,* a las págs. 479-80.

Tan importante es tener en cuenta la voluntad de las partes para propósitos de determinar el carácter novatorio de un nuevo acuerdo, que varios autores propugnan que la modificación de una de las condiciones principales del contrato no necesariamente supone una novación extintiva, si esa no es la voluntad de los contratantes. De otra parte, según estos tratadistas, puede operar la novación extintiva con simplemente modificarse una condición secundaria, si así es declarado terminantemente por las partes. ■

A la luz de la doctrina anterior, evaluemos la situación particular del caso que nos ocupa. En el presente caso nos encontramos ante un contrato de arrendamiento de servicios. Una vez vencido el término originalmente establecido en el contrato, las partes acordaron extender el mismo mes a mes hasta que cualquiera de ellas notificara a la otra parte su intención de dar por terminada la relación contractual. Específicamente se señaló en la carta que dio lugar a la extensión del plazo del referido contrato, que todas las cláusulas y demás condiciones del contrato permanecerían inalteradas. ■

De lo reseñado anteriormente surge que nos encontramos ante una novación modificativa de la obligación contraída entre Cost y la O.M.E.P. En este caso la única variación que las partes hicieron al referido contrato fue extender el mismo mes a mes, dejando vigente todos los términos originalmente pactados en el contrato suscrito el 30 de diciembre de 1992.

Por tratarse en este caso de un contrato de arrendamiento de servicios, el término de vigencia del mismo no representa una condición principal, tal y como surge de las disposiciones de nuestro Código Civil. Según dicho cuerpo normativo, *"los servicios pueden arrendarse por tiempo fijo o por cierto*

*tiempo"*, distinto, por ejemplo, al contrato de arrendamiento de cosas, en el cual el Código ·Civil expresamente requieře que se pacte por un *"tiempo determinado".* En *Atocha Thom McAn, Inc. v. Registrador*, 123 D.P.R. 571 (1989), el Tribunal Supremo indicó que *"estos preceptos [refiriéndose a los preceptos del Código Civil referentes al término del contrato de arrendamiento de ·cosas] ponen de manifiesto, como uno de los elementos esenciales del contrato de arrendamiento el tiempo determinado, es decir, el requisito de limitación temporal".* En virtud de ello, resolvió dicho tribunal que la duración del término de este contrato implica novación y que la extensión de un contrato de arrendamiento no puede estimarse como una continuación del original, por ·cuanto el término del contrato es una de las condiciones esenciales al mismo.

Puede colegirse de lo anterior que el término de un contrato de arrendamiento ·de servicios no es una condición esencial al mismo por cuanto nuestro Código Civil, *supra,* no exige a las partes que establezcan un término determinado de duración para que el referido contrato tenga validez ·legal, dejando la decisión al arbitrio de los contratantes.

Sin embargo, como discutimos anteriormente, las normas legales deben ser compatibles con ·la intención de las partes al determinar el efecto que tendrá un cambio en las condiciones de ·una obligación, por lo cual no podemos circunscribirnos en nuestro análisis a los preceptos legales. Es necesario tener en cuenta la intención de las partes, según surge de lo pactado, para·determinar si, en efecto, éstas tuvieron la intención de extinguir la obligación original y sustituirla·por ·una ·nueva ·o ·si meramente se limitaron a modificar la obligación dejando vigente la misma.

En el presente caso, el texto de la carta que dio lugar a la extensión del contrato ·es ·el ·siguiente:

*"El contrato. de referencia termina el 30 de enero de 1994. Mediante comunicación de fecha 3 [sic] de enero de 1994 le notificamos nuestra intención de concluir el mismo en dicha fecha. Dejamos sin efecto la carta del 3 de enero de 1994 en cuanto a la fecha de terminación del contrato.*

*Estamos extendiendo el contrato 93-CON-123, de mes a mes, a partir del 1ro. de febrero ·de 1·994 hasta que cualquiera de las partes notifique a la otra por escrito con 15 días de antelación su intención de dar por terminado el mismo.*

*Todas las cláusulas y demás condiciones permanecen inalteradas."*

Claramente surge de lo antes transcrito que el contrato original nunca venció, por cuanto ·mediante la carta del 26 de enero de 1994, antes de la fecha de vencimiento del contrato, se dejó sin efecto ·una carta del 3 enero de 1994 en la que la O.M.E.P. había notificado a Cost su intención de dar por terminado el contrato en la fecha originalmente establecida por las partes. Además, de la misiva surge específicamente que la intención de las partes era extender el mismo contrato (núm. 93-CON-123) y no el contraer una nueva obligación. Más importante aún, se estableció específicamente que todos ·los términos permanecerían inalterados.

Es clara la intención de los contratantes de dejar inalterada la obligación contraída el 30 de diciembre de 1992. Resolvemos que en virtud de dicha intención y dado que los términos esenciales del contrato permanecieron inalterados, el efecto que tuvo extender el contrato mes a mes fue modificar la obligación original, dejando vigente la misma, por lo cual operó una novación modificativa de la obligación y no una extintiva.

Habiéndose mantenido vigente el contrato original, y no tratándose de un nuevo contrato entre ·las partes, resolvemos que Cost no hizo una nueva certificación con respecto al cumplimiento con su responsabilidad contributiva al extenderse la duración del contrato. La certificación original se mantuvo vigente. A pesar de que Cost, al momento de modificarse el contrato, ·no había rendido sus planillas correspondientes a los dos (2) años anteriores, dicha parte no violó ·los términos del contrato, por cuanto ésta no ofreció una nueva certificación. De haberse tratado de un nuevo contrato, la O.M.E.P. hubiese tenido razón en sus alegaciones. En tal caso el resultado hubiese sido distinto por cuanto el hecho de contraer una nueva obligación implicaba que Cost debía certificar nuevamente el cumplimiento de su responsabilidad contributiva para que el nuevo contrato tuviese validez ·legal.

Sin embargo, por tratarse en este caso de una novación modificativa, el contrato original quedó vigente, por lo que resolvemos que Cost no incumplió con lo establecido en la cláusula decimoctava al momento de modificarse el contrato.

## V

Una vez resuelto que erró el tribunal apelado al interpretar la cláusula decimoctava del contrato suscrito entre la O.M.E.P. y Cost, nos corresponde dilucidar las restantes alegaciones presentadas por la O.M.E.P. en su solicitud de sentencia sumaria. Estas requieren ser evaluadas para determinar si, como cuestión de derecho, procede disponer del presente caso de forma sumaria.

Es doctrina reiterada que cuando un caso ha sido resuelto por un tribunal inferior a base de documentos, los tribunales apelativos se encuentran en posición similar a la de los foros sentenciadores para evaluar la prueba presentada. *Díaz García v. Aponte Aponte*, 125 D.P.R. 1, 1314 (1989); *Pueblo v. Pagán Díaz*, 111 D.P.R. 608, 618 (1981); *Asoc. Auténtica Empl. v. Municipio de Bayamón*, 111 D.P.R. 527, 530 (1981). En virtud de ello, estamos en posición de evaluar las alegaciones de la O.M.E.P. en su solicitud de sentencia sumaria a la luz de la prueba documental que tuvo ante su consideración el tribunal *a quo*.

En su moción de sentencia sumaria la O.M.E.P. alegó el incumplimiento por parte de Cost de varias disposiciones del contrato suscrito entre ambas partes. Dichas imputaciones de incumplimiento son las siguientes:

*"a. No haber solicitado Cost un número de seguro social patronal con anterioridad a diciembre de 1992, fecha en que fue suscrito el contrato.*

*b. No haber rendido Cost los correspondientes informes corporativos anuales al Departamento de Estado.*

*c. No haber pagado Cost al Fondo del Seguro del Estado (F.S.E). la cantidad de $23,691.66 que le corresponde pagar como patrono.*

*d. No haber pagado Cost al Departamento del Trabajo y Recursos Humanos (D.T.R.H). las primas anuales del seguro por desempleo e incapacidad de sus empleados correspondientes a los años 1993-95.*

*e. No haber obtenido Cost autorización de la O.M.E.P. para subcontratar servicios.*

*f. No haber requerido Cost a los subcontratistas certificaciones del rendimiento a tiempo de sus planillas y el pago de sus contribuciones."*

En términos del contrato suscrito entre las partes, las alegaciones identificadas con los acápites (a), (b) y (c), son inmeritorias, por cuanto éstas no fueron obligaciones contraídas por Cost al contratar con la O.M.E.P. Estas alegaciones fueron presentadas por la O.M.E.P. con el propósito de demostrar el alegado patrón de incumplimiento por parte de Cost de sus obligaciones para con el gobierno. ▇ Resolvemos que igualmente es inmeritoria la alegación de la O.M.E.P. a los efectos de que Cost incumplió con el pago de primas por seguros de empleados al D.T.R.H.

Del contrato no surge que Cost hubiese certificado mediante la firma de dicho documento que se encontraba al día con sus obligaciones para con el D.T.R.H. No obstante, alega la O.M.E.P. que aunque dicha obligación no estaba específicamente incluida en el contrato, la misma surge de la Orden Ejecutiva del 28 de agosto de 1992, Boletín Administrativo OE-1992-52. Veamos.

La Orden Ejecutiva del 28 de agosto de 1992, *supra*, fue aprobada con el propósito de enmendar la Orden Ejecutiva OE-1991/-24, *supra*. En su parte pertinente dicha orden establece lo siguiente:

*"De igual modo toda persona natural o jurídica que esté cubierta por las disposiciones de la Ley de Seguridad de Empleo, de la Ley de Beneficios por Incapacidad Temporal y/o la Ley de Seguro Social para Choferes deberá certificar que ha pagado las contribuciones o que se ha acogido a un*

*plan de pagos. A tales efectos todos los contratos gubernamentales a otorgarse luego de la vigencia de la presente Orden Ejecutiva deberán incluir la siguiente disposición:*

*La parte contratista certifica y garantiza que al momento de suscribirse este contrato ha pagado las contribuciones de seguro por desempleo, de incapacidad temporal y de seguro social para choferes (la que aplique); o se encuentra acogida a un plan de pago, con cuyos términos y condiciones está cumpliendo...".*

A pesar de que la antes mencionada orden ejecutiva fue promulgada con antelación a la fecha en que se otorgó el contrato que nos ocupa, resolvemos que la misma no es de aplicación al caso de autos. La referida orden ejecutiva exige a las agencias que en todo contrato gubernamental incluyan la antes transcrita cláusula, de tal forma que toda persona natural o jurídica que contrata con el gobierno certifique haber cumplido con la obligación que tiene con el D.T.R.H.

No obstante, en el presente caso la anterior cláusula no fue incluida como parte del contrato. En vista de ello, no puede la O.M.E.P. ampararse en una orden ejecutiva para exigir el cumplimiento de una obligación que Cost no contrajo. Al suscribir el contrato, Cost no hizo certificación alguna en cuanto a su cumplimiento con la obligación del pago de las primas de seguros por desempleo. No habiéndose requerido dicha certificación, no puede imputársele a Cost el incumplimiento de dicha responsabilidad como parte de los términos del contrato, para dejar el mismo sin efecto.

Resolvemos, por tanto, que el incumplimiento de Cost con el pago de las primas de seguro al F.S.E. no conlleva el dejar sin efecto el contrato suscrito con la O.M.E.P., por cuanto esta obligación no era parte de los términos del contrato.

## VI

Alega la O.M.E.P., además, que Cost incumplió con su obligación contractual al no solicitarle autorización para otorgar subcontratos en virtud de la cláusula decimoprimera del contrato suscrito por ambas. ▮ Dicha cláusula exige que todo contratista principal obtenga autorización escrita por parte de la O.M.E.P. antes de subcontratar servicios para cumplir con el contrato principal. Por otro lado, alega la O.M.E.P. que Cost tampoco cumplió con los términos del contrato al no requerirle a los subcontratistas que certificaran el haber cumplido con sus obligaciones contributivas, tal y como requiere la cláusula decimoctava, antes transcrita. ▮

Para aprobar sus alegaciones, la O.M.E.P. acompañó a su moción de sentencia sumaria partes de la transcripción de una deposición tomada a la Sa. María J. Oquendo, presidenta de Cost, y otra tomada al Sr. José Ricardo Martínez, gerente de dicha empresa. En la referida deposición se les preguntó específicamente a cada uno de los deponentes si Cost había requerido autorización de la O.M.E.P. previo a adquirir los servicios de varios subcontratistas. La Sa. Oquendo contestó no recordar si, en efecto, dicha autorización había sido requerida y, por su parte, el Sr. Martínez alegó que no le constaba haber visto dicha autorización en el expediente de la compañía. ▮

En cuanto a esta parte de la controversia, Cost no hizo alegación alguna en su oposición a la moción de sentencia sumaria ni acompañó documentos que controvirtieran este hecho. Este aspecto de la controversia tampoco fue objeto de determinación alguna por parte del tribunal apelado.

Sabido es que el mero hecho de que una parte presente una solicitud de sentencia sumaria no implica necesariamente que la misma sea resuelta a favor, aun cuando la parte contraria no controvierta los hechos alegados por la parte que la solicita. Como indicamos anteriormente, para dictar una sentencia sumaria a favor de una parte es necesario que los hechos materiales del caso no estén en controversia y que, como cuestión de derecho, proceda dictar sentencia sumaria a favor de quien la solicita. A tales efectos se resolvió lo siguiente en *Colegio de Ingenieros v. A.A.A.*, ___ D.P.R. ___ (1992), **92 J.T.S. 137**, a la pág. 10025:

*"La moción para que se dicte sentencia sumaria deberá ir acompañada de documentos que avalen los hechos que sustentan la posición de la parte que la solicita... Se dictará sentencia sumaria solamente si de los documentos sometidos con la moción y la oposición a ésta y los que obran en autos no hay controversia real en cuanto a ningún hecho material y que como cuestión de derecho*

*procede dictarse la misma."*

Por otro lado, en *López Stubbe v. J. Gus Lallande,* __ D.P.R. __ (1998), **98 J.T.S. 9,** a la pág. 523, se señaló lo siguiente:

*"La sentencia sumaria procede sólo cuando el promovente ha establecido su derecho con claridad y ha quedado demostrado que la otra parte no tiene derecho a recobrar bajo cualquier circunstancia que resulta discernible de las acciones que no hayan sido refutadas por la evidencia presentada con la moción."*

En el presente caso, de la prueba documental que utilizó la O.M.E.P. para sustentar su alegación, no surge el incumplimiento por parte de Cost. La transcripción de partes de las deposiciones presentadas por la O.M.E.P. son insuficientes para establecer efectivamente que Cost no solicitó la autorización de aquélla para subcontratar, ni tampoco surge que Cost no haya solicitado de los subcontratistas la correspondiente certificación sobre el cumplimiento de éstos con el pago de sus contribuciones. En síntesis, no surge de la prueba presentada por la O.M.E.P. que ésta tenga derecho a que se dicte sentencia a su favor.

Por carecer este Tribunal de los elementos de juicio suficientes para disponer de esta parte de la controversia, debido a la insuficiencia de la prueba presentada en unión a la moción de sentencia sumaria, devolvemos el caso al foro apelado. Este deberá recibir prueba adicional que le permita determinar, si en efecto, Cost incumplió con las cláusulas decimoprimera y decimoctava del contrato referente a los subcontratistas.

## VII
En cuanto al planteamiento de Cost a los efectos de que incidió el foro apelado al no aplicar al caso la doctrina de enriquecimiento injusto, resolvemos que no le asiste la razón.

Como muy bien indicó el tribunal *a quo* en su sentencia, existen ciertos requisitos jurisprudenciales que deben cumplirse para que la doctrina del enriquecimiento injusto pueda ser aplicada en un caso particular. Los mismos son: 1) existencia de un enriquecimiento; 2) un correlativo empobrecimiento; 3) la conexión entre el empobrecimiento y el enriquecimiento; 4) falta de causa que justifique el enriquecimiento y 5) la inexistencia de un precepto legal que excluya la aplicación del enriquecimiento sin causa. *Ortiz Andújar v. E.L.A.,* 122 D.P.R. 817, 823 (1988).

En el presente caso es menester dilucidar si en efecto hubo incumplimiento por parte de Cost. De determinarse que lo hubo, Cost estaría impedida de reclamar la aplicación de la referida doctrina, por cuanto sí existiría causa para el alegado enriquecimiento de la O.M.E.P. Por otro lado, de determinarse que Cost no incumplió con los términos del contrato, esta parte tendría derecho a exigir el cumplimiento específico de la O.M.E.P. de su parte de la obligación, pero no en virtud de la doctrina de enriquecimiento injusto, sino al amparo de los propios términos del contrato. Por lo tanto, resolvemos que dicha doctrina no es de aplicación al caso de marras.

## VIII
Por los fundamentos anteriormente esbozados, revocamos la determinación recurrida. En el presente caso no procedía dictar sentencia sumaria, por lo cual se devuelve el caso al Tribunal de Primera Instancia para que éste reciba prueba adicional en el caso y resuelva la controversia de acuerdo con lo dispuesto en la parte VI de la presente sentencia.

Así lo acordó y manda el Tribunal y lo certifica la Señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 98 DTA 157

**1.** Aun cuando el foro apelado denominó su dictamen como sentencia sumaria parcial, se trata en realidad de una sentencia sumaria final que dispuso de la totalidad de la controversia entre todas las partes. Por tal razón acogemos el presente recurso

como uno de apelación, tal-cual fuera presentado por Cost.

2. A pesar de que dicha carta tiene fecha del 26 de enero de 1993, ambas partes aceptaron ante el Tribunal de Primera Instancia que la fecha correcta de la misma lo es el 26 de enero de 1994. Véase sentencia sumaria del 2 de septiembre de 1997, Apéndice del escrito de apelación, anejo I, pág. 4.

3. A pesar de que lo antes dicho puede dar la impresión de que estamos ante una sentencia parcial, del propio contrato surge que la determinación del Tribunal de Primera Instancia a los efectos de que Cost incumplió con la antes mencionada cláusula dirimió la totalidad de la controversia. El contrato establece que de incurrir Cost en violación de la cláusula decimoctava, no tan sólo la O.M.E.P. tiene derecho a dejar sin efecto el contrato, sino que también puede requerirle a Cost la devolución de toda suma de dinero pagada en virtud del contrato. Por lo cual, una vez el foro apelado resolvió que Cost había incumplido con los términos dé la cláusula decimoctava, no era necesario posponer lo relacionado con la reconvención de la O.M.E.P. para un momento posterior.

4. Dicha regla en su parte pertinente reza como sigue:

*"...La sentencia solicitada se dictará inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente...".*

5. Véase sentencia sumaria del 2 de septiembre de 1997, Apéndice del escrito de apelación, anejo I, pág. 15.

6. Apéndice del escrito de apelación, anejo I, pág. 16.

7. Dicho artículo reza como sigue:

*"Para que una obligación quede extinguida por otra que la substituya, es preciso que así se declare terminantemente, o que antigua y la nueva sean de todo punto incompatibles."*

8. José Puig Brutau, *Fundamentos de Derecho Civil,* (ed. 1988), T. I, Vol. II, pág. 389.

9. *Id.*, a la pág. 397.

10. A pesar de que nuestro Tribunal Supremo no ha acogido expresamente esta doctrina, dicho foro al analizar la importancia que tiene la intención de las partes para determinar los efectos de la novación expuso las posturas de varios renombrados tratadistas. Véase Marina Ind. Inc., *supra*, a la págs. 74-75; Warner Lambert, *supra*, a la pág. 390.

11. Véase carta suscrita por el Director de la O.M.E.P., dirigida a la Sa. Oquendo, presidenta de Cost. Apéndice de la Oposición a Moción de Desestimación presentada ante nos por Cost, Anejo I, pág. 44.

12. Artículo 1473 del Código Civil, 31 L.P.R.A. sec. 4111.

13. Artículo 1433 del Código Civil, *supra*, sec. 4012.

14. Véase alegato de la parte apelada, la O.M.E.P., a la pág. 15.

15. Dicha cláusula establece lo siguiente:

*"EL CONTRATISTA no podrá subcontratar trabajo alguno del contrato original, a menos que obtenga una autorización y aprobación escrita de LA OFICINA, quien se reserva el derecho de no aprobar el subcontrato...".* (Apéndice del escrito presentado por Cost en oposición a la moción de desestimación presentada por la O.M.E.P., anejo I, pág. 38).

16. Véase páginas 6-7 de la presente sentencia.

17. Para fines de presentar claramente lo alegado por los deponentes, transcribimos a continuación las partes pertinentes de sus declaraciones.

A. Transcripción de parte de la deposición tomada al Sr. Martínez gerente de Cost:

*"P. ¿Usted recuerda, que la última deposición, yo le pregunté si cada vez que, si por ejemplo, Puerto Rico Basketball Services, Impresora Oriental, todos estos contratistas independientes que se contrataban para cumplir con el contrato-*

*R. Umhum.*

*P. --si había evidencia en Cost Control de dos cosas; número uno, de que se había solicitado la autorización de OMEP y número dos, si se había cumplido con la exigencia contractual de asegurarle que estas personas estaban--habían cumplido sus obligaciones contributivas. ¿Hay evidencia de eso en Cost Control?*

*R. No yo no he visto.*

*P. ¿No la hay?*

*R. No. De los conocimientos que tengo del expediente no lo he visto.*

*B. Transcripción de la deposición tomada a la Sa. Oquendo presidenta de Cost:*

*P. Okay. Este, ¿cuando ustedes hacían esas subcontrataciones.*

*R. Umhum.*

*P. --ustedes pedían autorización a la OMEP?*

*R. Pues, mira, no recuerdo eso. Puede que se le haya informado, puede que no, pero es cuestión de pedir los memos, información. Pero búsquenla en OMEP.*

*P. Por eso, si no recuerdas, me dices que no recuerdas, pero yo-- son áreas, este, que yo, este, quiero cubrir. ¿Cuando hacían esas subcontrataciones, ustedes le exigían al subcontratista que acreditara su cumplimiento con Hacienda, que no le debía dinero al erario público?*

*R. No recuerdo eso, pero busque en el contrato de las personas que estábamos todo el mundo tenía sus contratos.*

*P. ¿No recuerdas que hacían eso?*

*R. No recuerdo, no recuerdo, fíjate, eso realmente..."*