*Se dictará la correspondiente sentencia confirmatoria.*

GOBLE & JIMÉNEZ, INC., demandante y recurrente, *v.* DORÉ RICE MILL, INC., demandada y recurrida.

*Número:* R-78-1     *Resuelto:* 30 de noviembre de 1978

---

([19]) Reza:

*Pedro Morell Corrada,* abogado de la recurrente; *Benny Frankie Cerezo,* abogado de la recurrida.

El Juez Asociado Señor Torres Rigual emitió la opinión del Tribunal.

En *Warner Lambert Co.* v. *Tribunal Superior,* 101 D.P.R. 378 (1973), establecimos que no toda modificación de un contrato produce efectos extintivos. Siguiendo los claros preceptos del Art. 1158 del Código Civil, 31 L.P.R.A. sec. 3242, afirmamos que el efecto novatorio extintivo se produce solamente cuando las partes lo han querido y así lo han declarado en forma terminante; o en su defecto, cuando la intención de novar se deriva de la incompatibilidad absoluta entre la nueva obligación y la antigua. [1]

El primer supuesto no ofrece dificultad puesto que las partes manifiestan inequívocamente lo que quieren. No cabe aquí presunción alguna de intención puesto que el Art. 1158, *supra,* impone un modo específico para expresarla. *Caribe Lumber Corp.* v. *Marrero,* 78 D.P.R. 868 (1955). El segundo supuesto, el de la incompatibilidad, es ya más complejo porque hay que inferir la voluntad novatoria examinando la naturaleza de las obligaciones y las circunstancias que rodearon los acuerdos de las partes. Se trata propiamente de una cuestión de interpretación que siempre suscita controversia. El maestro Clemente De Diego afirma al respecto que ". . . el problema de la novación degenera en definitiva en un proble-

[1] El Art. 1158 provee:
"Para que una obligación quede extinguida por otra que la substituya, es preciso que así se declare terminantemente, o que la antigua y la nueva sean de todo punto incompatibles."

ma de voluntad o de interpretación de voluntad." *Efectos Novatorios de un Contrato*, 1 Rev. Der. Privado, 472, 480.

La complejidad del problema es la que ha traído el presente caso a la etapa de revisión pues los hechos adjudicados por el tribunal de instancia son claros y definitivos en cuanto a la solución de la controversia.

Los hechos pertinentes adjudicados por el tribunal de instancia revelan que desde el 1949 la recurrente Goble & Jiménez, Inc., concertó un acuerdo verbal con la recurrida Doré Rice Mill, Inc., para la distribución en Puerto Rico del arroz grano mediano marca "Chévere". Las obligaciones de la recurrente bajo este contrato consistían en promover y efectuar las ventas del arroz, coordinar las entregas, gestionar los cobros, remitirlos a los recurridos, supervisar la publicidad y representar los intereses de la recurrida ante las agencias gubernamentales. Por todas estas gestiones la recurrente recibía como compensación una comisión que varió durante el curso de las relaciones entre las partes. El recurrente era el único y exclusivo distribuidor del arroz marca "Chévere", aunque Ventura Rodríguez & Sons compraba directamente a la recurrida el mismo arroz grano mediano pero con las marcas privadas "Pamplona" y "Estrella" propiedad de aquél. La recurrente no intervenía ni recibía compensación por estas ventas directas de marcas privadas. El tribunal de instancia destacó en sus conclusiones el testimonio del señor Frank Jiménez, Presidente de la recurrente, al efecto de que "él no conoce de ninguna instancia en que el arroz por ellos distribuido haya sido mercadeado en Puerto Rico por ninguna otra persona o entidad." Véanse Determinación de Hecho Núm. 5.

En mayo de 1972 la recurrida ofreció al recurrente la distribución de arroz grano largo que se proponía lanzar al mercado, ofreciéndole una comisión de cinco por ciento. En junio de 1972 el Presidente de la recurrente, Frank Jiménez, se reunió en Louisiana con D. J. Stelly, gerente de venta al ex-

terior de la recurrida para discutir problemas relacionados con el enriquecimiento del arroz, inventarios, publicidad, la introducción del arroz de grano largo, comisiones, embarques, incentivos, contratos con clientes y proyecciones de venta. Los puntos acordados por las partes en dicha reunión aparecen expuestos en un anejo a la carta que el 27 de junio de 1972 le escribió Stelly a Jiménez. Reproducimos a continuación los párrafos que propiamente tienen que ver con las relaciones de distribución y que se intitulan "Private Label", "Virgin Islands", "Commission" y "Ventura Rodríguez":

"PRIVATE LABEL:

After much discussion, it was decided that DORE RICE MILL was not interested in any medium grain private label packaging, however, would suggest to Frank that he make an informal proposal to Pueblo Super Markets for packing their Long Grain requirements under a private label. Frank will investigate this matter further and if he gets the green light, DORE RICE MILL will make an outline and proposal for his use.

VIRGIN ISLANDS:

It was agreed that Frank will handle DORE RICE MILL package rice business in the Virgin Islands. Frank will act as General Agent for the Virgin Islands but will appoint sub-agents in both St. Thomas and St. Croix. In our price structure a 2½% commission for the sub-agent has already been built in. This is for the distribution of Long Grain package rice. One point which was not mentioned in our meeting and was brought to my attention this morning is the fact that we will have to adhere to minimum quantities in order to enjoy the price we quoted. This minimum is 40,000 pounds through Miami or 45,000 pounds if shipped with Gulf Puerto Rico Lines with trans-shipments in San Juan. This may pose some problems to get the business established, however, we should still go ahead with our investigation of the market and ascertain how much rice we think we can move into this market.

COMMISSION:

It was agreed that the commission on medium grain package rice will be 15¢ per bale for the first 275,000 bales and 17¢ per

bale for the amount above 275,000 bales. This commission arrangement applies *ONLY* to the DORE RICE MILL brand of medium grain rice.

## VENTURA RODRIGUEZ:

It was agreed that after Ventura's present supply of private label material is exhausted, this business will be channelled through Frank. Dudley will write Ventura about this new policy and furnish Frank with a copy of the letter so Frank can follow up."(²)

---

(²) Los párrafos restantes se refieren más bien a normas de operación, según se puede ver a continuación:

"SALES FORECAST:

"We will end this season with approximately 257,000 bales of package rice, 'CHEVERE' and 'DORE'. Our forecast for season 1972–73 is for a 10% increase, or a total of 280,000 bales.

"ENRICHMENT:

"Frank revealed that our product was picked up off the shelf twice and found to be low in enrichment. Frank was notified and he wrote the authorities a letter and is still waiting for a deposition [*sic*] of the matter. We agreed not to do anything about this matter until further investigation is completed by Dr. Novak and the Puerto Rican authorities. A note of interest is that Riviana has apparently encountered much problems in this area and were actually fined.

"CONSIGNMENT:

"A new policy was established for sales out of consignment stock for this coming season. A certain amount of stock will be carried for the accommodation of the trade. This stock to be kept at a minimum at all times. Sales to regular customers will be at the same price level as the customer is paying for importing direct. All other customers will be charged 10¢ per bale more than the existing price.

"SPECIAL ALLOWANCE:

"It was agreed to allow a 10¢ per bale incentive rebate for customers importing 1,000 or more bales per month of either 'CHEVERE' or 'DORE' or a combination of both brands. This new policy applies to both existing customers and any new customers that will be developed. Rebate of this special allowance to be made on a quarterly basis. The rebate will cover the actual dollars amount accompanied by a record of shipment for quarter involved.

"RICE TRANSFERS:

"It was agreed that it is necessary to transfer rice from one customer to another from time to time. In order to control such transfers and keep accurate records, Dudley will devise a transfer form to be used by GOBLE

■ Es decir, a) la recurrida expresó no tener interés en vender arroz grano mediano bajo marcas privadas, pero sugirió a Jiménez que propusiera a Pueblo Super Markets la venta de arroz grano largo bajo una marca privada. La recurrente nunca se benefició de este renglón porque no generó actividad alguna al respecto según determinó el tribunal de instancia en el párrafo número 7 de sus Determinaciones de Hecho. Todos los negocios de Ventura Rodríguez se canalizarían a través de la recurrente, tan pronto aquél agotara su inventario de marcas privadas; b) se amplió la relación de distribución para cubrir las Islas Vírgenes, pero la recurrente nunca efectuó ventas en el mercado de Islas Vírgenes; c) se aumentó la comisión por la venta de arroz grano mediano. En orden a estos acuerdos la recurrente sostiene que hubo una novación extintiva por incompatibilidad entre la nueva obligación y la que hasta entonces había existido. La cuestión es fundamental para la recurrente porque la Ley de Contratos de Dis-

---

& JIMENEZ whenever a transfer does take place. This form should be ready to use with shipments of first new crop rice.

"BALE CODING:

"It was discussed and agreed that commencing with new crop rice and the operation of the new packaging plant that a code system be devised to code our bales. It was agreed that this could be done with a rubber stamp indicating i.e. D1372, when translated reads D-DORE; 137 May 9th (see a counting house calendar); 2—the year, in this case, 1972. While we have not had too much trouble with complaints in Puerto Rico, it nevertheless, is a good idea to code all package rice in the event we do have problem.

"MEDIA ADVERTISING:

"It was generally agreed that the proposal of McCann-Erickson was not too sporty. Dudley will write a letter to the agency with a copy to Frank outlining some of the discrepancies in the proposal.

"RECIPES:

"It was suggested by Frank that we investigate the possibility of developing a recipe booklet for free distribution in Puerto Rico. This booklet cannot involve color reproduction because of the cost involved. It should be a printed double-fold letter size sheet similar to the one attached which was produced by the Rice Council. Dudley will investigate the cost and if is decided that such a booklet can be developed, then Frank will furnish the Spanish translation for recipes used."

tribución, Ley Núm. 75 de 24 de junio de 1964, 10 L.P.R.A. sec. 278, no puede aplicarse retroactivamente, y, sólo si ha habido una novación del contrato con posterioridad a su vigencia puede el recurrente valerse de sus remedios. *Warner Lambert Co.* v. *Tribunal Superior*, supra. No tiene, sin embargo, razón.

La incompatibilidad a que se refiere el Art. 1158, *supra*, es a la absoluta, a la excluyente de todo punto. *Warner Lambert*, supra. Supone un cambio tan radical en la naturaleza de la nueva obligación con la antigua que no pueden coexistir, son mutuamente excluyentes. Valverde: IV *Tratado de Derecho Civil Español*, 195 (3ra. ed. 1923). Hernández Gil la define como "toda alteración esencial impeditiva del cumplimiento de la primera obligación."

La doctrina sugiere como uno de los criterios para determinar la incompatibilidad en las obligaciones de hacer, como es el contrato de distribución envuelto en el presente caso, el de considerar si las alteraciones al objeto del contrato son cualitativas o cuantitativas. Andreoli: *La Novazione tacita obbiettiva*, citado por Azurza, en 34 Rev. Der. Privado a la pág. 605. La alteración se considera de tipo cualitativo cuando la obligación se sustituye por otra de naturaleza distinta. *Id.* Cuando sólo se afecta el *quantum* de las obligaciones la modificación se considera puramente cuantitativa y no afecta el vínculo original. *Warner Lambert Co.*, supra, a la pág. 393 y autores allí citados.

A poco que examinemos las modificaciones acordadas por las partes en el 1972 notaremos que no hay cambio cualitativo que pudiera alterar radicalmente los elementos del contrato original. La relación original permanece incólume desempeñando la recurrente las mismas gestiones que desempeñaba antes del 1972. Los cambios fueron puramente cuantitativos: 1) *ampliar* la distribución para incluir las marcas privadas y arroz grano largo; 2) *ampliar* el área de distribución a

Islas Vírgenes, que como ya advertimos el recurrente nunca efectuó ventas en dicho territorio; 3) *aumentar* la comisión.

La recurrente insiste en la novación extintiva con el argumento de que antes de 1972 el convenio de distribución no era exclusivo porque Ventura Rodríguez & Sons compraba arroz de grano mediano directamente a la recurrida, sin que ella interviniera en esta venta ni cobrara comisión; que los acuerdos de 1972 establecieron la exclusividad de las relaciones. El argumento no es atendible porque pasa por alto que la recurrida nunca vendió a Ventura Rodríguez arroz "Chévere", que era el que distribuía la recurrente, sino que empacaba arroz grano mediano bajo las marcas privadas "Pamplona" y "Estrella", propiedad de aquél. Por otro lado, la conclusión del tribunal de instancia fue a los efectos de que la recurrente era el único y exclusivo distribuidor del arroz "Chévere".

▬▬ Aun si tomáramos en consideración la significación económica de estas modificaciones, como sugieren Castán y otros autores, (³) no puede inferirse la intención de novar los cambios efectuados en el 1972. Con respecto a las marcas privadas ya vimos que no tenían importancia comercial para la recurrida y que la recurrente no generó actividad comercial alguna con respecto a las mismas. En cuanto a las ventas a Ventura Rodríguez & Sons bajo sus marcas privadas nada surge del récord. Igualmente sucede con el territorio de Islas Vírgenes. El récord guarda silencio sobre el impacto económico del aumento de comisión, pero ya sabemos que estos cambios nunca tienen efectos novatorios.

Es correcta pues la conclusión del tribunal de instancia al efecto de que ninguna de las modificaciones acordadas en el 1972 es incompatible con las relaciones establecidas en el con-

---

(³) Castán Tobeñas: *Derecho Civil Español, Común y Foral* 389 (11ma. ed. 1974).

Azurza, *op. cit., supra,* a la pág. 597.

Bonet Ramón, 32 Rev. Der. Privado 240 (1948).

venio verbal de 1949, y, por tanto, no tuvieron efecto novatorio.

El recurrente también señala como error el que no se determinara por el tribunal de instancia que el convenio de distribución fue prorrogado en noviembre de 1974. Funda su señalamiento en una carta fechada el 5 de noviembre de 1974 que el gerente general de Doré Rice Mill, Inc. dirigió a Jiménez. *Exh.* Núm. 15 del demandante. En dicha carta se expresó que ambas partes coinciden en que es necesario mejorar y expandir la distribución, que para ello es necesario una organización de ventas y que Jiménez indicó que planeaba reorganizar su compañía y tendría algo definitivo para enero de 1975; que la recurrida, a su vez, planeaba respaldar esos esfuerzos con una campaña publicitaria y, cuando fuere necesario, unas promociones especiales. ([4])

El énfasis de esta comunicación es en la necesidad de mejorar la organización de mercadeo, indicando Jiménez que planeaba reorganizar su empresa y Stelly que planeaba respaldarlo en una campaña de publicidad. Expresiones generales como estas relativas a planes futuros sobre reorganización y publicidad son insuficientes para derivar una intención de prorrogar el contrato.

*Se dictará sentencia confirmando la aquí recurrida.*

El Juez Asociado Señor Dávila no intervino.

---

([4]) En lo pertinente dicha carta lee:

"The most important discussions took place in your office the morning of my departure. We both realize that we need to improve our coverage and expand distribution. Despite the fact that sales will run close to 300,000 bales for 1974, it is our feeling, mostly mine, that with a little effort, it can increase to 500,000 bales. In order to do so, a sales organization is needed to better serve the island and get into the places we are not already selling. Along these lines, you have indicated that you plan to re-organize your company, and will have something definite to announce January 1975. We, in turn, are planning to support efforts with an advertising campaign, and when needed, special promotions.

"Frank, in the last 15 months, the buying trends of Puerto Rico have changed so much that a more active participation must be taken to keep abreast of the changes. I suspect that we will see many more changes within the next twelve months."