# 2001 DTA 133

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE CAROLINA-FAJARDO

CREFISA, INC.
Apelado

v.

COLEGIO BAUTISTA BETHEL, INC.
Apelante

Núm. KLAN-01-00117

San Juan, Puerto Rico, a 16 de marzo de 2001

Panel integrado por su Presidente, el Juez Miranda De Hostos,
la Juez Hernández Torres y el Juez Martínez Torres

Miranda De Hostos, Juez Ponente

### TEXTO COMPLETO DE LA SENTENCIA

La parte apelante Colegio Bautista Bethel, Inc. (Colegio Bautista), acude ante nos de una sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Carolina, mediante la cual declaró con lugar la demanda sobre ejecución de hipoteca que presentó en su contra la parte apelada Crefisa, Inc. (Crefisa).

Alega la parte apelante que incidió el foro de instancia al concluir que seguía vigente una cláusula de aceleración contenida en el contrato original entre las partes, ya que ocurrió una novación extintiva donde la

cláusula fue sustituida en el Plan de Reorganización bajo el Capítulo 11 de la Ley de Quiebras, al cual se había acogido. Alega, además, que incidió el tribunal al determinar el monto de la deuda.

Atendido el escrito de apelación y su oposición, modificamos la sentencia a los fines de establecer el monto correcto de la deuda y así modificada, se confirma. Veamos los fundamentos.

## I

Los hechos que dan origen a la demanda comienzan el 28 de enero de 1987, cuando Caguas Federal Savings concedió un préstamo al Colegio Bautista por la suma principal de $825,000.00 dólares.

Para garantizar dicho préstamo, el Colegio Bautista gravó una propiedad con una hipoteca en garantía de un pagaré por la suma principal de $825,000.00 con intereses al 4% anual sobre el interés en efecto para notas del Tesoro de Estados Unidos, con vencimiento en seis (6) meses ajustados cada seis (6) meses a las notas emitidas la semana anterior. Además, se pactaron créditos accesorios y la suma de $82,500.00 de costas, gastos y honorarios de abogados en caso de reclamación judicial.

El 10 de julio de 1996, el Banco Santander de Puerto Rico radicó demanda en ejecución de hipoteca, pues el Colegio Bautista no había cumplido con los pagos según pactados. El 25 de octubre de 1996, el Banco Santander presentó una moción de sentencia sumaria a lo que el Colegio Bautista se opuso, debido a que se proponía instar una petición de quiebras.

El 7 de enero de 1997, la parte apelante radicó una petición voluntaria de reorganización ante el Tribunal de Quiebras, al amparo del Capítulo 11 del Código Federal de Quiebras, por lo cual se paralizaron los procedimientos de ejecución ante el Tribunal de Primera Instancia.

El 24 de junio de 1997, se aprobó un Plan de Reorganización ante el Tribunal de Quiebras; no obstante, el Colegio Bautista incumplió con dicho plan, por lo que luego fue modificado a los sólos efectos de la fecha de comienzo de los pagos. El 30 de marzo de 1998, el Colegio Bautista y el Banco Santander suscribieron una estipulación de protección económica para el banco, donde se estipuló que el balance adeudado para entonces era $633,127.77 en principal.

Posterior a estos eventos, Crefisa pasó a ser la tenedora por endoso del pagaré hipotecario por ésta haber adquirido el crédito hipotecario del Banco Santander. El Colegio Bautista incumplió con los pagos estipulados, por lo que el 9 de marzo de 1999, Crefisa reanudó los procedimientos de ejecución de hipoteca ante el Tribunal de Primera Instancia. La parte apelante Colegio Bautista aceptó que el incumplimiento de los pagos hasta el 31 de octubre de 1999 ascendía a la suma de $619,043.05 en principal.

Luego de varios trámites ante el Tribunal de Primera Instancia, inclusive una vista evidenciaria, dicho foro dictó sentencia el 2 de enero de 2001, declarando con lugar la demanda. Resolvió que procedía la ejecución de la hipoteca y que el acuerdo original continuaba rigiendo la deuda y las obligaciones de las partes. En dicha sentencia se condenaba al Colegio Bautista al pago de $633,127.77, intereses, recargos y honorarios de abogado para una suma total de $878,480.25 dólares.

Inconforme con dicha determinación, la parte apelante, el Colegio Bautista, acude ante nos en apelación.

## II

Analicemos la norma jurídica aplicable a la controversia ante nuestra consideración a la luz de los hechos relatados.

## A

El Código Federal de Quiebras tiene como propósito fundamental, el ofrecer a un deudor que está

insolvente la oportunidad de comenzar su vida económica nuevamente mientras se protege los intereses de los acreedores. *Collier Bankruptcy Manual*, Vol. 2, 3d Ed. 541.01, Mathew Bender (1999), citado como autoridad en *Allende Pérez v. Agustín García*, opinión de 28 de abril de 2000, **2000 J.T.S. 78**, pág. 1070.

Bajo el plan de reorganización que se instaure, el Tribunal de Quiebras dispone la creación de un caudal en quiebra y eventualmente las condiciones para el pago de las deudas, con el propósito de rehabilitar al deudor y que éste cumpla con sus acreedores, según lo paute dicho foro especializado. 11 U.S.C. sec. 362 *et seq.*

## B

En nuestra jurisdicción de estirpe civilista, las obligaciones pueden modificarse variando su objeto o condiciones principales, sustituyendo la persona del deudor, o subrogando a un tercero en los derechos del acreedor. Art. 1157 de Código Civil, 31 L.P.R.A. sec. 3241.

Aunque se reconoce la novación como una de las causas de extinción de las obligaciones, la misma no es siempre extintiva, pues puede ser modificativa. *Miranda Soto* v. *Mena Eró*, 109 D.P.R. 473, 478 (1980); *Blasini Stern* v. *Beech-Nut Life Savers Corp.*, 104 D.P.R. 570, 580 (1976).

Para que la obligación se extinga por otra que la sustituya, es necesario que se declare terminantemente la intención de novar, o que ambas sean del todo incompatibles. Art. 1158 de Código Civil, 31 L.P.R.A. sec. 3242. La incompatibilidad entraña un cambio radical entre la naturaleza de la obligación principal y la posterior de manera tal que ambas son mutuamente excluyentes. *G. & J., Inc.* v. *Doré Rice Mill, Inc.*, 108 D.P.R. 89, 96 (1978).

La novación extintiva conlleva la extinción de las garantías y demás derechos accesorios. Un resultado tan drástico como este, sólo puede ocurrir cuando las partes han tenido claramente la intención de extinguir las garantías y derechos accesorios. Por lo tanto, los tribunales deben de examinar cuidadosamente las circunstancias particulares de cada caso. Art. 1161 de Código Civil, 31 L.P.R.A. sec. 3245; *Warner Lambert Co.* v. *Tribunal Superior*, 101 D.P.R. 378, 391 (1971).

Por otra parte, estamos ante la novación modificativa cuando meramente ocurren modificaciones en la obligación original, pero ésta queda vigente, ya que meramente se dan facilidades para su cumplimiento como por ejemplo, prórrogas o plazos fraccionados. *Miranda Soto* v. *Mena Eró, supra*, págs. 479-80. Nuestro más alto foro ha expresado que un cambio en la fecha de vencimiento de una obligación que no altera ni la causa ni el objeto del contrato original, no tiene efecto novatorio. *Figueroa v. Banco de San Juan*, 108 D.P.R. 680, 691 (1979).

La jurisprudencia ha expresado que se debe considerar si la alteración al objeto del contrato es una cuantitativa o cualitativa. La alteración cualitativa es aquélla que sustituye la obligación original por otra de naturaleza distinta. Por otro lado, la alteración cuantitativa es aquélla que únicamente afecta el *quántum* de la obligación y no afecta el vínculo original. En esta última, se ha reconocido que la novación es modificativa y no extingue la obligación original. *G. & J., Inc.* v. *Doré Rice Mill, Inc., supra*, pág. 96; *Warner Lambert Co.* v. *Tribunal Superior, supra*, pág. 393.

## C

Por último, pero no menos importante, vencida la obligación con garantía hipotecaria, pueden ser enajenadas las cosas en que consisten la hipoteca para el pago al acreedor. Art. 1757, *supra*, 31 L.P.R.A. sec. 5003; *P.R. Prod. Credit Assoc.* v. *Registrador*, 123 D.P.R. 231, 240 (1989).

A tales fines:

*"Un acreedor hipotecario puede proceder directamente contra su deudor original, el cesionario de éste, o*

*contra el comprador de la propiedad principal, cuando este último ha asumido el pago de la hipoteca, y aun contra el deudor y su cesionario conjuntamente."*

*Carrera v. Palerm*, 52 D.P.R. 815, 816 (1938); *Calo Rivera v. Reyes*, 115 D.P.R. 123, 126 (1984).

### III

Procedemos a aplicar la norma jurídica antes discutida a los hechos ante nos.

En la deuda con garantía hipotecaria entre el Colegio Bautista y Crefisa, no ha ocurrido una novación extintiva, por lo que el contrato original continúa rigiendo los derechos y obligaciones entre las partes.

El Plan de Reorganización establecido por el Tribunal de Quiebras, sólo tuvo el efecto de alterar la fecha del vencimiento del pago. Esto es un cambio cuantitativo por cuanto no alteraba la obligación original entre las partes y ésta subsiste con todas sus garantías y demás derechos accesorios.

No podemos inferir modificaciones adicionales a las establecidas en el Plan de Reorganización con más razón, cuando nada se estipuló en cuanto a la cláusula de aceleración de la deuda, por lo que no podemos presumir que la misma fue eliminada.

La intención de las partes fue clara a los términos que sólo se estaba modificando la fecha del vencimiento de la deuda con garantía hipotecaria. El Plan de Reorganización de 7 de abril de 1971, confirmado por el Tribunal de Quiebras claramente dispone:

*"The holder of this Class IV shall retain the lien securing such claim".*

(Ap. 1, pág. 90.)

Más aún, en la estipulación sometida por las partes el 30 de marzo de 1998 y confirmada por el Tribunal de Quiebras, *"Stipulation for Adequate Protection"*, claramente expresa:

*"Failure to comply with the stipulated monthly payments shall entitle Santander to continue with foreclosure proceedings without further order of the Bankruptcy Court, and for such purposes the stay of 11 U. S.C. §362 is considered lifted."*

(Ap. 3, pág. 100.)

Ante tales circunstancias, es preciso el concluir, al igual que el Tribunal de Primera Instancia, que la deuda fue modificada solamente sobre la fecha de su vencimiento, pero no en cuanto a su pago acelerado en caso de incumplimiento. Por lo tanto, procedía la ejecución del crédito hipotecario conforme lo resuelto por el Tribunal de Primera Instancia.

### IV

La parte apelante, Colegio Bautista, alega a su vez como error que el monto de la deuda no es $878,480.25, sino $619,043.05, además, $11,162.37 por concepto de una cuenta plica de ésta con Crefisa. Estimamos que no es necesario la discusión de dicho error, ya que la parte apelada, Crefisa, acepta tal alegación y que el monto fijado por el Tribunal de Primera Instancia es incorrecto. Por lo tanto, procede la corrección de la sentencia a tales extremos.

### V

Por los anteriores fundamentos, se modifica la sentencia apelada a los fines de establecer el monto correcto de la deuda a $619,043.05 y $11,162.37 en una cuenta plica del Colegio Bautista con Crefisa, y así modificada,

se confirma según sus términos y condiciones.

Lo acordó y manda el Tribunal y lo certifica la Subsecretaria General.

Gladys E. Ortega Ramírez
Subsecretaria General