ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| LUIS GILBERTO GARCÍA BENÍTEZ, IVONNE VANESA FRAGOSO SANTA y la sociedad legal de gananciales compuesta por ambos, <br><br> Apelada, <br><br> v. <br><br> KEVIN JAVIER FIGUEROA IRIZARRY, <br><br> Apelante. | KLAN202301041 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de Fajardo. <br><br> Civil núm.: FA2021CV00640. <br><br> Sobre: incumplimiento de contrato. |
|---|---|---|

Panel integrado por su presidente, el juez Hernández Sánchez, la jueza Romero García y la jueza Martínez Cordero.

Romero García, jueza ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 16 de mayo de 2024.

Comparece la parte apelante Kevin Javier Figueroa Irizarry y nos solicita que revisemos y revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Fajardo, el 28 de agosto de 2023, notificada a las partes el 30 de agosto del mismo año. Mediante la misma, el foro primario declaró con lugar la demanda instada por la parte apelada, integrada por Luis Gilberto García Benítez, Ivonne Vanesa Fragoso y la sociedad legal de bienes gananciales compuesta por ambos. A su vez, ordenó a las partes que otorgaran una escritura ante notario para traspasar el título de pleno dominio del apartamento objeto de la controversia a los apelados. Finalmente, declaró sin lugar la *Reconvencion* presentada por la parte apelante.

Por los fundamentos que expondremos a continuación, confirmamos la *Sentencia* apelada.

I

El 13 de agosto de 2021, la parte apelada presentó una demanda contra el señor Figueroa Irizarry[1]. En esencia, reclamó que la parte

---
[1] *Véase*, apéndice del recurso, a las págs. 1 y 2.

Número identificador

SEN2024_____

apelante había incumplido con las condiciones de compraventa y asunción de hipoteca de un inmueble[2]. En específico, adujo que la parte compradora no gestionó, dentro del término dispuesto para ello, un préstamo hipotecario dirigido a cancelar la hipoteca asumida y, a su vez, incumplió con el contrato al atrasarse en los pagos mensuales, cuyo monto fue pactado en $10,000.00. En virtud de lo anterior, solicitó la devolución de la propiedad, amparándose en la cláusula del contrato que establecía que la parte vendedora podía solicitar la devolución de la propiedad ante el incumplimiento de los pagos mensuales.

El 10 de noviembre de 2021, la parte apelante presentó su contestación a la demanda[3]. En su escrito, además de negar las alegaciones medulares, aseveró que, como parte de los acuerdos de compraventa, la parte vendedora le concedería un término adicional para cumplir con la liberación del crédito hipotecario, de existir justa causa para ello. Adujo que siempre mantuvo a la parte vendedora al tanto de las gestiones realizadas a esos fines y arguyó que no conseguir el financiamiento necesario no le era atribuible. Además, alegó que, contrario a lo planteado por la parte apelada, nunca se atrasó en el pago del préstamo.

El 3 de enero de 2022, el señor Figueroa Irizarry presentó una moción mediante la cual, entre otros asuntos, solicitó autorización para presentar una *Reconvención*[4]. Expresó que durante siete (7) meses había hecho pagos directos a la parte apelada, quien debía remitir los mismos a la acreedora para el saldo de la hipoteca, sin embargo, no lo había hecho. También, adujo que había hecho los pagos dirigidos al mantenimiento de la propiedad y estos tampoco fueron remitidos por la parte apelada, según correspondía. Finalmente, catalogó como temerarios y de mala fe los actos

---

[2] Se trataba del apartamento 141 del proyecto las *Casitas II Resort Condominium*, ubicado en el Barrio Las Cabezas del Municipio de Fajardo, que se identifica como la finca núm. 15,204, inscrita al folio 205 del tomo 353 de Fajardo, y al cual se le asignara el número de finca 20,7000. *Véase*, apéndice del recurso, a la pág. 4.

[3] *Íd.*, a las págs. 14-15.

[4] *Íd.*, a las págs. 26-30.

de la parte apelada dirigidos a solicitar la devolución de la propiedad. Por tanto, solicitó al foro primario que le permitiera presentar una reconvención.

Tras varias incidencias procesales, el 31 de enero de 2022, se celebró una vista argumentativa[5]. El foro primario otorgó un término a la parte apelada para presentar una demanda enmendada. Ello, con el fin de aclarar que lo solicitado por la parte apelada estaba dirigido a que se rescindiera la compraventa del inmueble y se devolviera el título de la propiedad. En consecuencia, el 15 de febrero de 2022, la parte apelada presentó su demanda enmendada[6].

Por su parte, el señor Figueroa Irizarry presentó su contestación a la demanda enmendada[7]. En lo pertinente, reafirmó su postura en cuanto a que no había incumplido con el contrato de compraventa. Además, a su contestación adjuntó su reconvención enmendada. Adujo que estuvo pagando el préstamo hipotecario directamente a la parte vendedora durante el periodo de septiembre 2020 a febrero 2021, para un total de **$68,427.52**; sin embargo, a esa misma fecha, solo se había abonado **$50,316.59**, para el pago de la hipoteca. Concluyó que se le adeudaba **$18,111.33** y el foro primario debía ordenar su pago.

El 8 de marzo de 2022, la parte apelada presentó su contestación a la reconvención[8]. En lo pertinente, adujo que no tenía deuda alguna con el señor Figueroa Irizarry y negó que la amortización del préstamo fuera equivalente a realizar los pagos al préstamo.

Posteriormente, el 26 de abril de 2023, la parte apelada presentó una solicitud de sentencia sumaria[9], a la cual se opuso la parte apelante el 16 de mayo de 2023[10].

---

[5] *Véase*, apéndice del recurso, a las págs. 33-38.

[6] *Íd.*, a las págs. 39-40.

[7] *Íd.*, a las págs. 42-47. La parte apelante adjuntó a su escrito copia de varios cheques pagaderos a la orden de Luis García. *Íd.*, a las págs. 48-55.

[8] *Íd.*, a las págs. 57-58.

[9] *Íd.*, a las págs. 74-82.

[10] *Íd.*, a las págs. 86-100.

Sometido el asunto, el 23 de mayo de 2023, el Tribunal de Primera Instancia emitió una *Resolución* al amparo de la Regla 36.4 de Procedimiento Civil 32 LPRA Ap. V, y declaró sin lugar la moción de sentencia sumaria[11].

Entre tanto, las partes litigantes del título llamaron a la atención del foro primario un error en cuanto a la determinación de hechos núm. 3 de la referida resolución[12]. El 27 de junio de 2023, el Tribunal de Primera Instancia emitió una resolución enmendada en reconsideración[13]. En esta, el foro primario determinó que existían asuntos medulares en controversia, que debían dilucidarse en el juicio en su fondo. Entre ellos, si el comprador tenía que completar el proceso de financiamiento dentro del plazo de treinta (30) días o si había incumplido con dicha gestión, según pactado. Además, debía atender si el comprador había realizado o no abonos al préstamo luego del 1 de junio 2021, o si la parte vendedora había retenido alguna porción de los pagos entregados. Finalmente, estableció que, de probarse que la parte compradora había incumplido con los abonos pactados, determinaría la cuantía del reembolso que debía efectuar la parte vendedora.

Tras las incidencias procesales de rigor, el 11 de agosto de 2023, se celebró el juicio en su fondo[14]. Luego de evaluar la prueba documental y testifical, el 30 de agosto de 2023, el Tribunal de Primera Instancia notificó su *Sentencia*[15]. En esta, declaró con lugar la demanda y ordenó a la parte

---

[11] *Véase*, apéndice del recurso, a las págs. 127-135. En la referida *Resolución*, el Tribunal de Primera Instancia otorgó un término a las partes para que se expresaran sobre: (1) si la demanda constituía una demanda de retracto al amparo del Art. 1407 del Código Civil de 1930 o del Art. 1054, 31 LPRA secs. 1915 y 8865; (2) si el tribunal tenía jurisdicción para conceder el remedio solicitado. Tras varias incidencias procesales descritas en este tracto, el foro primario anunció que se reservaría el fallo en cuanto a estos asuntos hasta el juicio en su fondo. *Íd.*, a las págs. 168 y 169.

[12] *Íd.*, a las págs. 136-137.

[13] *Íd.*, a las págs. 159-167.

[14] *Íd.*, a las págs. 243-245. Según la transcripción de la prueba oral (TPO) sometida por la parte apelante, en el juicio testificaron: el señor **Jeancarlos M. Mendoza Castro**, gerente de cobro de la acreedora hipotecaria, Cooperativa de Ahorro y Crédito Oriental; el codemandante, señor **Luis Gilberto García Benítez**; y, el demandado apelante, señor **Kevin Javier Figueroa Irizarry**.

[15] *Íd.*, a las págs. 254-267.

apelante que devolviera la propiedad en controversia. A su vez, ordenó a las partes litigantes que otorgaran una escritura pública ante notario para traspasar el título de pleno dominio del apartamento por el precio de $486,329.26, cantidad que la parte apelada retendría para el saldo del préstamo hipotecario. Finalmente, declaró sin lugar la reconvención presentada, por entender que el señor Figueroa Irizarry **no había presentado prueba que permitiera concluir que la parte apelada hubiera retenido indebidamente $18,111.33.**

Inconforme con la determinación del tribunal, el 14 de septiembre de 2023, el señor Figueroa Irizarry presentó una moción de reconsideración y solicitó determinaciones de hechos y conclusiones de derecho adicionales[16]. En lo pertinente, alegó que la parte apelada indujo a error al tribunal toda vez que la propiedad objeto del pleito no estaba gravada por una hipoteca, sino que la garantía que tenía el acreedor del préstamo era una personal, asumida por la parte apelada y, por tanto, no podía ser asumida por un tercero sin el consentimiento del acreedor. A su vez, señaló que la parte apelada ejerció actos de dominio sobre el imueble un año antes de que se emitiera la sentencia apelada.

El 3 de octubre de 2023, la parte apelada presentó su réplica y rebatió los argumentos presentados por el señor Figueroa Irizarry[17]. Sometidas el asunto, el 20 de octubre de 2023, el Tribunal de Primera Instancia declaró sin lugar la reconsideración[18]. A su vez, declaró sin lugar la solicitud de determinaciones de hechos y conclusiones de derecho adicionales.

Aún inconforme, el 21 de noviembre de 2023, el señor Figueroa Irizarry compareció ante nos y formuló los siguientes señalamientos:

> Erró el Honorable Tribunal de Primera Instancia al no distinguir entre asumir una hipoteca y asumir una obligación personal.

---

[16] *Véase*, apéndice del recurso, a las págs. 268-277.

[17] *Íd.*, a las págs. 291-297.

[18] *Íd.*, a la pág. 299.

> Erró el Honorable Tribunal de Primera Instancia al determinar que la obligación de pago mensual del apelante era de $10,000.00.
>
> Erró el Honorable Tribunal de Primera Instancia al declarar sin lugar la reconvención a pesar de haber determinado que el apelante pagó la cantidad de $222,477.80, cuando le correspondía pagar $177,719.37.
>
> Erró el Honorable Tribunal de Primera Instancia al ignorar los planteamientos efectuados en la moción bajo las Reglas 43.1 y 47 de Procedimiento Civil por entender que resultan inmateriales.
>
> Erró el Honorable Tribunal de Primera Instancia al emitir sentencia y reiterar la misma en ausencia de parte indispensable.

(Énfasis omitido).

El 1 de diciembre 2023, la parte apelante presentó una moción al amparo de la Regla 76 del Reglamento de este Tribunal, 4 LPRA Ap. XXII-B. Tras varias incidencias, la transcripción de la prueba oral, debidamente estipulada, fue presentada el 31 de enero 2024. Finalmente, el 14 de marzo de 2024, la parte apelante presentó su alegato suplementario. El 21 de marzo de 2024, compareció la parte apelada y presentó su alegato en oposición.

Con el beneficio de la transcripción de la prueba oral y la comparecencia de las partes, resolvemos.

II

A

La escritura de compraventa objeto de la controversia en este caso se otorgó en agosto de 2020. Por tanto, a pesar de que el Código Civil de Puerto Rico, Ed. 1930, 31 LPRA sec. 1, *et seq.*, fue derogado efectivo el 28 de noviembre de 2020, por el Código Civil de Puerto Rico de 2020, Ley Núm. 55 de 1 de junio de 2020, 31 LPRA sec. 5311, *et seq.*, a la controversia de autos le aplica el derogado Código Civil[19].

Aclarado esto, reiteramos que en nuestro ordenamiento jurídico se considera que las obligaciones nacen de la ley, de los contratos y

---

[19] Cualquier mención subsiguiente al Código Civil de Puerto Rico se entenderá que es a su edición de 1930, aplicable a los hechos del caso.

cuasicontratos, y de los actos y omisiones ilícitos en que intervenga cualquier género de culpa o negligencia. Art. 1042 del Código Civil, 31 LPRA sec. 2992.

En cuanto a los contratos, el Art. 1044 del Código Civil disponía que "las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse al tenor de los mismos". 31 LPRA sec. 1994. En cuanto a ello, el Tribunal Supremo de Puerto Rico ha reiterado que "un contrato existe desde que una o varias personas prestan su consentimiento a obligarse a dar alguna cosa o prestar algún servicio". *Rodríguez Ramos et al. v. ELA et al.*, 190 DPR 448, 455 (2014).

Ahora bien, según dispuesto en nuestro ordenamiento, los contratos serán válidos solo cuando concurran tres elementos: consentimiento, objeto y causa. Art. 1213 del Código Civil, 31 LPRA sec. 3391. Cabe resaltar que el Art. 1230 establecía que "[l]os contratos serán obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez". 31 LPRA sec. 3451.

De otra parte, el principio de la autonomía contractual "permite que las partes contratantes establezcan los pactos, las cláusulas y las condiciones que entiendan convenientes". *Rodríguez Ramos et al. v. ELA et al.*, 190 DPR, a las págs. 455-456; Art. 1207 del Código Civil, 31 LPRA sec. 3372. **Esa autonomía estará limitada únicamente, y el contrato será nulo e inexistente, si este último resulta contrario a las leyes a la moral o al orden público**. 31 LPRA sec. 3372; *Rodríguez Ramos et al. v. ELA et al.*, 190 DPR, a la pág. 456.

Adicionalmente, y también dentro del contexto de la obligatoriedad de los acuerdos contractuales, el Código Civil reconoce la figura de la novación. Esta constituye una de las causas de extinción de las obligaciones contractuales. Art. 1110, 31 LPRA sec. 3151. Esta consiste en la modificación de los términos de determinado vínculo, ya sea mediante la variación de su objeto o condiciones principales, de la persona del deudor,

o mediante la subrogación de un tercero en los derechos del acreedor. Art. 1157 del Código Civil, 31 LPRA sec. 3241. En atención a ello, la normativa aplicable dispone que, "[p]ara que una obligación quede extinguida por otra que la sustituya, es preciso que así se declare terminantemente, o que la antigua y la nueva sean del todo punto incompatibles." Art.1158, 31 LPRA sec. 3242.

Tales criterios se cumplen en la denominada novación extintiva; figura que provee para la extinción de una obligación preexistente entre determinadas partes y, en consecuencia, para el nacimiento de una nueva que regirá su relación jurídica. J.R. Vélez Torres, *Derecho de Obligaciones: Curso de Derecho Civil,* Segunda Edición, San Juan, Universidad Interamericana de Puerto Rico, Facultad de Derecho, 1997, pág. 225*.* Por el contrario, cuando se producen cambios secundarios o de poca envergadura respecto a un vínculo particular, los mismos no tienen el efecto de suprimir el pacto original. *Goble & Jiménez v. Doré Rice Mill,* 108 DPR 89, 92 (1978); *Warner Lambert v. Tribunal,* 101 DPR 378 (1973). De ahí que en nuestro ordenamiento jurídico se ha distinguido la novación modificativa como aquella que se traduce en una renovación convencional de la misma, permitiendo así que se sostengan los efectos del vínculo primitivo a la luz del cambio introducido. J.R. Vélez Torres, *op. cit.*

En lo pertinente, la novación que tiene lugar por razón de una sustitución en la persona del deudor puede hacerse sin conocimiento de este, pero no sin el consentimiento del acreedor. Art. 1159, 31 LPRA sec. 3243. Así, este tipo de cambio, distinto al supuesto jurídico de la asunción de deuda, necesariamente presupone que medie el consentimiento expreso del acreedor de la obligación, a fin de sustituir la figura de quien está llamado a satisfacer su acreencia. J.R. Vélez Torres, *op. cit.*; *Teachers Annuity v. Soc. de Gananciales,* 115 DPR 277, 288-289 (1984).

B

La Regla 43.1 de las de Procedimiento Civil, 32 LPRA Ap. V, regula las solicitudes para enmiendas o determinaciones iniciales o adicionales de

hechos. Al igual que una moción de reconsideración, una moción presentada oportunamente al amparo de esta regla interrumpirá automáticamente los términos para recurrir en alzada, siempre que la parte solicitante cumpla con las especificaciones que las propias reglas establecen. *Morales y otros v. The Sheraton Corp.*, 191 DPR 1, 7 (2014).

Entre los requisitos de la referida regla está que toda solicitud de determinaciones de hechos adicionales exponga, con suficiente particularidad y especificidad, los hechos que el promovente estime se probaron. *Íd.*, a la pág. 10. Los hechos adicionales también deben estar relacionados con controversias sustanciales. *Íd.* La mencionada regla no se puede utilizar para introducir prueba que estuvo disponible en el juicio o traer nuevas teorías. *Íd.*

.    .    .    .    .    .    .    .    .    .

> No se debe perder de vista que los propósitos de la regla son permitir: (1) que el tribunal quede satisfecho de que atendió cabalmente todas las controversias y (2) que las partes y los foros apelativos estén informados de todos los cimientos de la decisión del Tribunal de Primera Instancia.

.    .    .    .    .    .    .    .    .    .

*Íd.* (Citas suprimidas).

C

La Regla 16 de Procedimiento Civil, 32 LPRA Ap. V, gobierna lo relacionado a la acumulación de partes. En específico, dispone que "[l]as personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas, según corresponda". Regla 16.1 de Procedimiento Civil, 32 LPRA Ap. V.

Una parte es indispensable cuando la controversia no puede adjudicarse sin su presencia ya que sus derechos se verían afectados. *Rivera Marrero v. Santiago Martínez*, 203 DPR 462, 479 (2019); *López García v. López García*, 200 DPR 50, 63 (2018).

El alcance de la Regla 16.1 forma parte del esquema de rango constitucional que prohíbe que una persona sea privada de su libertad o propiedad sin el debido proceso de ley. *López García v. López García*, 200

DPR, a la pág. 63. Por tal motivo, ante la ausencia de una parte indispensable, el tribunal carece de jurisdicción para resolver la controversia. *Rivera Marrero v. Santiago Martínez*, 203 DPR, a la pág. 479; *Bonilla Ramos v. Dávila Medina*, 185 DPR 667, 677-678 (2012); *Romero v. S.L.G. Reyes*, 164 DPR 721, 733 (2005).

Por otro lado, el Tribunal Supremo de Puerto Rico ha expresado que, a la hora de determinar si la presencia de una parte es indispensable para adjudicar una controversia, se debe analizar "si el tribunal podrá hacer justicia y conceder un remedio final y completo sin afectar los intereses del ausente". *Bonilla Ramos v. Dávila Medina*, 185 DPR, a la pág. 677. A su vez, en la interpretación de esta regla se requiere una evaluación a la luz de las circunstancias particulares que se presenten y no de una fórmula rígida para determinar su aplicación. *López García v. López García*, 200 DPR, a la pág. 64.

III

Por estar estrechamente relacionados, discutiremos en conjunto el primero, segundo y quinto señalamiento de error planteados por la parte apelante.

Los planteamientos de la parte apelante están dirigidos a establecer que el Tribunal de Primera Instancia erró al no realizar una distinción entre la asunción de una hipoteca y la asunción de una obligación personal. A su vez, señala que el foro primario incidió al emitir la sentencia y reiterar la misma a pesar de la ausencia de una parte indispensable. También, aduce que erró al determinar que la obligación de pago mensual del apelante era de $10,000.00.

En síntesis, la parte apelante aduce, **por primera vez desde comenzado el pleito**, que en este caso no se asumió una hipoteca sino una obligación personal, por lo que medió una novación del contrato; acto que requería el consentimiento del acreedor hipotecario, el cual debía constar en forma patente y manifiesta. Arguye que la hipoteca objeto de controversia no estaba inscrita en el Registro de la Propiedad Inmueble y,

por tanto, no había sido constituida. Pretende establecer que, como consecuencia de lo anterior, el acreedor del préstamo lo que posee es una garantía personal regida por el pagaré suscrito por la parte apelada. Propone que, en atención a ello, debemos concluir que los pagos a la hipoteca eran menores a los $10,000.00 pactados y que el lenguaje de la escritura solo le obligaba a efectuar los pagos según requeridos por el acreedor; en este caso, la Cooperativa de Ahorro y Crédito Oriental. Discute que, como corolario de lo anterior, no solo se requería aprobación de la antes mencionada Cooperativa para efectuar la compraventa del modo en que se hizo, sino que esta era parte indispensable en el pleito.

Por su lado, la parte apelada arguye que tanto las obligaciones contraídas por el señor Figueroa Irizarry, como las consecuencias de su incumplimiento, surgían de la escritura con total claridad. Señaló que la parte apelante se había obligado a realizar pagos mensuales de $10,000.00 al préstamo hipotecario y a gestionar el refinanciamiento dentro del periodo estipulado. Sostuvo que no medió una transferencia y asunción de la obligación hipotecaria, en tanto el primer pago mensual no era el monto del plazo del préstamo, y el comprador debía gestionar un nuevo financiamiento.

En específico, planteó que la Escritura Núm. 113 de compraventa y para asumir la hipoteca establecía que el nuevo préstamo gestionado por el señor Figueroa Irizarry tendría como fin "liberar el crédito y de todo tipo de obligación a la parte vendedora", y no, contrario a lo planteado por la parte apelante, sustituir al deudor primitivo por un nuevo deudor.

Además, la parte apelada adujo que lo expresamente dispuesto en la escritura excluía la figura de la asunción de hipoteca. Así, en cuanto al señalamiento de falta de parte indispensable, lo tildó de frívolo. Señaló que la controversia a dilucidar versaba sobre el incumplimiento del contrato y que, al adjudicarse la misma, no se vieron, ni se verían afectados los derechos del acreedor hipotecario.

Evaluada la totalidad del expediente y la transcripción de la prueba oral colegimos que le asiste la razón a la parte apelada. Veamos.

La lectura de la Escritura de Compraventa Núm. 113 revela, sin lugar a duda, que el apelante se comprometió a realizar pagos mensuales de $10,000, y no el monto del plazo del préstamo. Además, surge que se comprometió a gestionar un nuevo financiameinto dentro del plazo de treinta (30) días, cuyo fin sería "liberar el crédito y de todo tipo de obligación a la parte vendedora", so pena de tener que devolver el inmueble a la parte vendedora. No surge que el propósito de dicha cláusula en el contrato fuera sustituir un nuevo deudor por el deudor primitivo en los mismos términos y condiciones frente al acreedor.

Es decir, no se pactó, ni se configuraron los requisitos para una novación del contrato. Por tanto, la controversia a dilucidar, según resuelto por el foro primario, se limitaba a resolver si en efecto hubo un incumplimiento de contrato; hecho que fue probado en juicio según surge de la prueba testifical y corroborado por la documental.

Surge de la prueba recibida por el foro primario que, si bien durante los primeros meses la parte apelada cumplió con el pago de $10,000, ya para junio de 2021, dejó de efectuar los pagos por la totalidad del monto pactado[20]. En atención al referido análisis, determinamos que la parte apelante en efecto se obligó al pago de $10,000 mensuales e incumplió con la referida obligación.

En cuanto al señalamiento sobre falta de parte indispensable, coincidimos con la parte apelada en que los derechos del acreedor hipotecario, en este caso, no se ven afectados, por lo que no se cometió el error señalado.

En cuanto al tercer error, el mismo no fue discutido por la parte apelante en su escrito de apelación ni en el alegato suplementario. Por tanto, no lo hemos considerado para efectos de esta sentencia.

---

[20] *Véase*, TPO, a la pág. 130.

Ahora bien, en su cuarto señalamiento de error, la parte apelante aduce que el foro primario obvió los planteamientos de su moción de reconsideración y solicitud de determinaciones adicionales de hechos y de derecho. En síntesis, planteó que la parte apelada presentó testimonio falso. Adujo que el Tribunal de Primera Instancia obvió prueba de la que podía tomar conocimiento judicial por ser de conocimiento público. En específico, se refirió a que el 7 de septiembre de 2022, los apelados subscribieron una escritura de liquidacion de bienes gananciales, mediante la cual la señora Fragoso Santa le vendió al señor García Benítez su participación en el inmueble objeto de controversia.

Contrario a lo planteado por la parte apelante en su escrito, el Tribunal de Primera Instancia atendió cada uno de los señalamientos sometidos en la moción de reconsideración y solicitud al amparo de la Regla 43.1 de Procedimiento Civil. De igual forma, expresamos que coincidimos con el foro primario en que los reclamos presentados resultaban inmateriales y fundamentados en prueba disponible, no ofrecida, la cual se pretendía presentar a destiempo.

IV

Por los fundamentos expuestos, confirmamos la *Sentencia* apelada. Notifíquese.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones